# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DANNY E. ROBINSON**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09cv00042 |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF** | ) | By: James P. Jones |
| **SOCIAL SECURITY**, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

*Pamela A. Counts, Lee & Phillips, P.C., Wise, Virginia, for the Plantiff; Eric P. Kressman, Region Chief Counsel, Region III, Lori Karimoto, Assistant Regional Counsel, and Victor Pane, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

## I

The plaintiff, Danny E. Robinson, filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits and widower's insurance benefits ("WIB")[1] pursuant to title XVI of the Social Security Act (the

---

[1] To qualify for WIB, an individual must show that he is the widower of a deceased wage earner, has attained the age of 50, is unmarried (with certain exceptions) and is under disability which began no later than seven years after the wage earner's death or seven years after he was entitled to survivor's benefits. *See* 20 C.F.R. § 404.335 (2009).

"Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) and § 1383(c)(3).

Robinson filed for benefits in November 2006, alleging disability beginning in February, 2003,[2] due to a combination of physical and mental ailments, including problems with his back and knee, anxiety and depression. His claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") at which Robinson was present and represented by counsel. In addition to Robinson, the ALJ heard testimony from a vocational expert ("VE"). The ALJ denied Robinson's claim and the Social Security Administration's Appeals Council denied Robinson's request for a review of the ALJ's opinion. Robinson filed his Complaint with this court objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, and have briefed the issues. The case is ripe for decision.

---

[2] At the hearing, Robinson amended his alleged onset of disability date to February 2006.

## II

Robinson was born in 1955, which classified him as a person closely approaching advanced age under 20 C.F.R. § 404.1563 (d) (2009) at the time of the hearing. Robinson has a high school education. He has not engaged in substantial gainful activity since the amended alleged onset date of disability. His past work experience consists of working as a route driver and warehouse manager for a soft drink distributor.

The record demonstrates that Robinson has undergone two surgeries to correct physical injuries. In 2002, Robinson underwent arthroscopic surgery on his right knee because of an intra-articular derangement. Additionally, Robinson had lumber fusion surgery in 2003, following findings of degenerative disc disease and discogenic back pain. Subsequent to both procedures, Robinson demonstrated improvement, and testing revealed only changes consistent with the operations.

Despite the lumbar fusion, the record reflects that Robinson continued to report severe back pain. It was repeatedly noted that Robinson suffered from chronic lumbar pain and in 2007, he was diagnosed with failed back syndrome. Examinations demonstrated the presence of tenderness over the lumbar area. In 2007, Robinson was diagnosed with a right meniscus tear, which was causing knee pain. Further, diagnostic imaging revealed mild

degenerative change in the right knee. Despite his knee and back problems, it was consistently noted that he ambulated with a normal gait.

Psychologically, the record indicates that Robinson has had problems with insomnia, depression and anxiety. Further, it was noted that he had a history of marijuana abuse, which was reportedly in remission. In March 2007, a psychiatrist opined that Robinson's psychological troubles were situational and in the past. On the other hand, at a psychological evaluation in January 2008, the psychiatrist found that Robinson suffered from depressive disorder, panic disorder without agoraphobia and assessed him with a Global Assessment of Functioning ("GAF") of 40.[3]

Reviewing the medical evidence, the ALJ found that Robinson suffered from severe impairments, including degenerative disc disease of the lumbar spine, status post lumbar fusion and osteoarthritis of the right knee. The ALJ found that because the mental impairments only caused minor limitations they were not severe. Although Robinson suffered from severe physical impairments, the ALJ found that they were not medically

---

[3] The GAF scale ranges from zero to 100 and "A[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (Am. Psychiatric Assoc. 1994).

A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." DSM-IV at 32.

determinable impairments under the Act. The ALJ determined that Robinson had the residual functional capacity ("RFC") to perform light work, with occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, no concentrated exposure to hazards, work around ladders, ropes, or scaffolds, and that his mood, pain, fatigue, and medications would cause him to pause for 10 seconds one to two times an hour with no abandonment of tasks. The VE testified that someone with such limitations could perform jobs existing in significant numbers in the national and regional economies. Thus, the ALJ concluded that Robinson was not disabled. Robinson claims that the ALJ's decision was not supported by substantial evidence. I disagree.


III

The plaintiff bears the burden of proving that he is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 426.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*.; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985).

In accordance with the Act, I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the role of this court to substitute its judgment for that of the Commissioner. *See Id*.

First, Robinson argues that the ALJ erred by failing to address Dr. Augustine's opinion that he was disabled. Only an ALJ can determine disability and a statement by a medical source that a claimant is "disabled" or "unable to work" is not definitive. *See* 20 C.F.R. § 404.1527(e) (2009); *see also* 20 C.F.R. § 404.1503 (2009). Accordingly, a doctor's opinion that a claimant is disabled is not binding. While it is true that the ALJ should discuss all relevant evidence, the ALJ weighed all objective medical evidence, including that from Dr. Augustine. Furthermore, the ALJ's decision is supported by substantial evidence of record. Thus, it was not an error for the ALJ to fail to discuss such opinion, because the ultimate determination of disability is reserved for the ALJ.

Next, Robinson argues that the ALJ erred by failing to find that he suffered from severe mental impairments and that such decision was not supported by substantial evidence. The ALJ found that certain restrictive

medical opinions of record conflicted with substantial evidence of record –
including Robinson's statements and testimony. The ALJ decided that since
the mental impairments alleged by Robinson did not cause more than mild
limitations, they were not severe.

At medical appointments in 2005, Robinson denied that he was
suffering from depression or anxiety. However, at one visit, in March 2005,
Robinson stated he was anxious after failing to take his medication, but
denied anxiety in a subsequent visit in June 2005. Consistently throughout
the record, Robinson was found to be alert and oriented, with normal affect
and to be in no acute distress. Although, on one occasion, Robinson was
found to be slightly disoriented. The record indicates that Robinson's
primary care physician continually diagnosed him with depression and
insomnia.

In March 2007, a state agency psychiatrist, Joseph Leizer, completed a
Psychiatric Review Technique form ("PRT") in which he opined that
Robinson did not have medically determinable mental impairments. Leizer
found that the problems Robinson had sought treatment for in the past were
merely situational, and noted that he was not currently undergoing treatment
or taking psychotropic medications.

In May 2007, state agency psychiatrist Richared Milan completed a PRT. He found that while Robinson had a history of anxiety and depression, they were improved and not currently in evidence. Dr. Milan found that Robinson would not be limited by any of his alleged mental impairments.

After being referred by his attorney, Robinson submitted to a psychological evaluation performed by William Hamil, Ph.D. Dr. Hamil opined that Robinson was not exaggerating his symptoms and noted that he appeared sad and depressed, but his affect was appropriate. Further, Dr. Hamil indicated that Robinson was mildly disoriented as to time and place and was limited in his short-term memory.

Robinson informed Dr. Hamil that he went grocery shopping and to church, was responsible for paying bills, cooked and was independent in bathing, dressing, grooming, and eating. Further, Dr. Hamil noted that Robinson related well during the evaluation, had good relationships with his family, maintained close friendships, and had good relationships with co-workers and supervisors when he was employed.

Dr. Hamil diagnosed Robinson with depressive disorder, panic disorder without agoraphobia and assessed him with a GAF of 40. Additionally, Dr. Hamil found that Robinson was severely limited in his

abilities to make occupational, performance, and personal-social adjustments.

During doctor's visits in 2008, Robinson repeatedly expressed that he did not have any complaints, only mentioning anxiety or depression on one visit in November. However, in January 2009, Robinson's counselor for Stone Mountain Health Services, D. Kaye Weitzman, opined that his chronic pain and mood swings would impose many limitations on his abilities to perform work-related activities.

After considering the evidence of record, including Robinson's statements to health care providers and his testimony, the ALJ decided that Robinson was not significantly limited by mental impairments and that Dr. Hamil's opinions were not supported by substantial evidence. I agree. Ultimately, it is the duty of the ALJ reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *See Hays*, 907 F.2d at 1456. Here, substantial evidence supports the ALJ's finding that Robinson's alleged mental impairments were not severe or disabling, and that Hamil's opinions were contrary to substantial evidence of record. Thus, the ALJ did not err in his decision regarding Robinson's alleged mental impairments.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

ENTER: May 24, 2010

/s/ James P. Jones
Chief United States District Judge